# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JONATHAN GOULD,<br><br>     *Plaintiff,*<br><br>v.<br><br>ROBERT O'NEAL, JOHN CAMPO, AND ROBERT GRADY,<br><br>     *Defendants.* | Civil Action No. 17-100<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This case arises from the arrest, detention, and commencement of a criminal prosecution against Plaintiff for theft. Following the dismissal of the criminal charges, Plaintiff sued for violations of his rights. The present matter comes before the Court on Defendants Robert O'Neal, John Campo, and Robert Grady's (collectively "Defendants") motion to dismiss Plaintiff Jonathan Gould's Complaint. Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim. D.E. 22. Plaintiff submitted a brief in opposition, D.E. 25, to which Defendants replied. D.E. 26.[1] The Court reviewed the submissions in support and in opposition, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion is **GRANTED**.

---

[1] In this Opinion, Defendants' motion to dismiss (D.E. 22) will be referred to as "Def. Brf." Plaintiff's brief in opposition (D.E. 25) will be referred to as "Pl. Opp." Defendant's reply brief (D.E. 26) will be referred to as "Def. Rep."

# I.   BACKGROUND

## A. Factual Background

Plaintiff is a New York resident and the son of Dr. Carol Gould.  Complaint ("Compl.") ¶¶ 4, 17.  Defendants are employees of the Essex County Prosecutor's Office ("ECPO") in Essex County, New Jersey.  *Id.* ¶ 2.  O'Neal is a detective, Campo is a sergeant, and Grady is an assistant prosecutor ("AP").  *Id.* ¶¶ 18, 19, 20.

Beginning sometime in late 2014, the ECPO opened an investigation into Plaintiff's alleged improper use of his mother's credit card account.  *Id.* ¶ 21.  On January 23, 2015, Detective O'Neal sent Plaintiff a letter, which stated that the ECPO was investigating matter "FC# 2014-17," and asked Plaintiff to call him.  *Id.* ¶ 22.  On February 4, 2015, Plaintiff and Detective O'Neal spoke on the phone.  Detective O'Neal asked Plaintiff to come to the Financial Crimes Unit of the ECPO, and Plaintiff agreed.  *Id.* ¶ 23.  The two men spoke on the phone again a few days later.  Plaintiff asked Detective O'Neal for more information on the investigation. Detective O'Neal said only that it involved Dr. Gould's credit card account.  *Id.* ¶ 24.  At that point, Plaintiff said Detective O'Neal should speak with his mother, but Detective O'Neal allegedly replied, "[w]e only talk to one person at a time."  *Id.* ¶ 25.

On February 11, 2015, AP Grady told Detective O'Neal that, after reviewing the case, Grady had determined that Plaintiff should be charged with second degree theft.  *Id.* ¶ 30. Subsequently, on February 13, 2015, Plaintiff came to the ECPO, where he was met by Detective O'Neal and Sergeant Campo.  *Id.* ¶ 31-32.  After Plaintiff chose not to waive his *Miranda* rights, Detective O'Neal and Sergeant Campo ended the meeting and served Plaintiff with a copy of a "Complaint-Summons."  *Id.* ¶ 30.  The "Complaint-Summons" charged Plaintiff "with second-degree theft by unlawful taking (theft exceeding $75,000) in violation of N.J.S.A. 2C:20-3(a)."

*Id.* ¶ 34. As noted, the theft allegations arose from Plaintiff's alleged misuse of Dr. Gould's credit card account from July 5, 2011 to April 5, 2014. *Id.* ¶ 36. Plaintiff claims to have been innocent of the charges because he "was an authorized user on the account" and because "Dr. Gould knew of and authorized [Plaintiff's] use of the account." *Id.* ¶ 5.

On February 26, 2015, Plaintiff appeared in state court and pled not guilty. *Id.* ¶ 38. The state court judge released Plaintiff on the conditions that "(a) he have no contact with Dr. Gould, her relatives, or any witnesses; (b) he have no contact with the Daughters of Israel Home where Dr. Gould lived in West Orange, New Jersey; (c) he sign a waiver of extradition from New York; and (d) he surrender his passport within 24 hours." *Id.* ¶ 39. Additionally, the judge ordered Plaintiff to appear again on March 30, 2015. *Id.* ¶ 40. Following the arraignment, Plaintiff "was taken to a locked inmate processing center where he was processed for arrest, including the taking of fingerprints and mugshots." *Id.* ¶ 41.

Afterwards, Plaintiff's defense counsel insisted that Detective O'Neal visit Dr. Gould to discuss Plaintiff's use of funds from her credit card account. Detective O'Neal agreed to do so. *Id.* ¶ 42. In the weeks after, sometime in February or March 2015, "Detective O'Neal and another detective visited Dr. Gould, who made clear that [Plaintiff] had her full permission to use the [credit card account], that [Plaintiff] was an authorized user of the account, and that she had approved all of the charges that Defendants had alleged were 'unlawful.'" *Id.* ¶ 43. Dr. Gould also allegedly expressed that she was upset by the ECPO's treatment of Plaintiff and their failure to contact her before the arraignment. *Id.* ¶ 44.

Following this meeting, the detectives informed AP Grady of the conversation with Dr. Gould. *Id.* ¶ 45. On March 30, 2015, the ECPO administratively terminated the criminal case

against Plaintiff. *Id.* ¶ 46. Finally, on August 6, 2015, the Superior Court of New Jersey, Essex County, entered a final expungement order as to Plaintiff. *Id.* ¶ 47.

### B. Procedural History

On January 6, 2017, Plaintiff filed a Complaint against Defendants. D.E. 1. The Complaint alleges claims of false arrest (Count One) and malicious prosecution (Count Two), both in violation of 42 U.S.C. § 1983. Compl. ¶¶ 52-72. Thereafter, on July 31, 2017, Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure (12)(b)(1) and Rule 12(b)(6). D.E. 22. Plaintiff submitted a brief in opposition to this motion, D.E. 25, to which Defendants replied. D.E. 26.

## II.    LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

In deciding a Rule 12(b)(1) motion for lack of subject-matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed.[2] A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). For a factual attack, "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Id.* at 178. The burden is on the Plaintiff to prove the Court has jurisdiction. *Id.*

---

[2] This Court also has an independent obligation to establish that it has subject-matter jurisdiction. *Morel v. INS*, 144 F.3d 248, 251 (3d Cir. 1998) ("[A federal] court . . . will raise lack of subject-matter jurisdiction on its own motion.") (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

## B. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## III.  LAW & ANALYSIS

Plaintiff's Complaint alleges two causes of action under 42 U.S.C. § 1983. Compl. ¶¶ 52-72. The First Count alleges a claim of false arrest in violation of Plaintiff's Fourth and Fourteenth Amendment rights against all Defendants. *Id.* ¶¶ 52-62. The Second Count alleges a claim of malicious prosecution in violation of Plaintiff's Fourth and Fourteenth Amendment rights against Defendants Detective O'Neal and Sergeant Campo. *Id.* ¶¶ 63-72. Plaintiff seeks compensatory and punitive damages as well as attorney's fees and costs pursuant to these claims. *Id.* ¶ 72.

Defendants argue that Plaintiff's Complaint should be dismissed on several grounds. First, Defendants argue that this Court lacks subject-matter jurisdiction over this action under Federal Rule 12(b)(1) because Defendants are entitled to sovereign immunity. Def. Brf. at 5. Second, Defendants argue that the Complaint should be dismissed under Federal Rule 12(b)(6) because AP Grady is entitled to absolute prosecutorial immunity, *id.* at 11-14, and Defendants Sergeant Campo and Detective O'Neal are, in their official capacities, not persons under Section 1983 or, in their individual capacities, entitled to qualified immunity under Section 1983. *Id.* at 15-20.

### A.  State Sovereign Immunity and Section 1983 Official Capacity

Defendants first argue that Plaintiff failed to allege claims against Defendants in their individual capacities and, instead, asserted claims against Defendants in their official capacities. Def. Brf. at 7. Therefore, Defendants conclude that they are immune from suit under the principle of state sovereign immunity. *Id.* Plaintiff responds that the claims are asserted against Defendants in their individual capacities. Pl. Opp. at 5.

If Plaintiff was asserting claims against Defendants in their official capacities as state officials, Defendants could likely assert sovereign immunity as a defense. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, the Eleventh Amendment protect states, as well as their agencies and departments, from suit in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This protection also extends to state employees acting in their official capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989). While Defendants are county employees, their actions are, nevertheless, state action if undertaken "under the color of law." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005); *Galliano v. Borough of Seaside Heights*, WL 979850, at *7 (D.N.J. Mar. 30, 2007) ("The misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law is action pursued under color of law within the meaning of 42 U.S.C.A. § 1983.") (citations omitted). Here, Defendants appear to qualify as state actors.

Claims under Section 1983 against state officials for damages implicate state sovereign immunity because such officials are not "persons" within the meaning of the statute. *Will*, 491 U.S. at 65. The United States Supreme Court has reasoned that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and, thus, any recovery of damages would come from the state treasury. *Id.* at 71. It follows, that any such recovery would be unconstitutional because Section 1983 does not abrogate the Eleventh Amendment. *Id.* at 76.

Plaintiff does not argue that Defendants should be considered county, rather than state, employees for purposes of his suit. Instead, he explains that the Complaint asserts claims against Defendants in their individual capacities. The Complaint, however, does not make the distinction that Plaintiff now claims. As a result, the Court dismisses the Complaint without prejudice, and Plaintiff may file an amended complaint that articulates he is suing Defendants in their individual capacities.

### B. Prosecutorial Immunity

Defendants next argue that the claim of false arrest against AP Grady should be dismissed because, as a prosecutor, he is entitled to absolute immunity. Def. Brf. at 11. Defendants point out that United States Supreme Court has long held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under s[ection] 1983." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Further, Defendants argue that the Third Circuit has found that absolute prosecutorial immunity extends beyond courtroom activity to out-of-court behavior "intimately associated with the judicial phases of litigation." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992) (internal quotations omitted).

Plaintiff agrees that prosecutorial immunity applies to all advocacy actions undertaken by a prosecutor. However, Plaintiff argues that the exception to the prosecutorial immunity for investigative actions undertaken by a prosecutor applies here. Specifically, Plaintiff asserts that where, as alleged here, a prosecutor advises police officers that probable cause exists for an arrest, prosecutorial immunity does not apply. Pl. Opp. at 6. *See Burns v. Reed*, 500 U.S. 478, 496 (1991) (declining to extend absolute prosecutorial immunity to a prosecutor's giving of legal advice to police officers).

The Court finds that, pursuant to the allegations in the Complaint, absolute prosecutorial immunity applies to the claim of false arrest against AP Grady. The factual allegations against AP Grady in the Complaint are limited. The Complaint asserts that "[d]espite a lack of probable cause, on or about February 11, 2015 Assistant Prosecutor Grady told Detective O'Neal that he had reviewed the case and decided that [Plaintiff] should be charged with second degree theft." Compl. ¶ 30. In sum, Plaintiff alleges that AP Grady told Detective O'Neal that he (Grady) had decided to charge Plaintiff with second degree theft. These alleged facts differ from those present in *Burns*. In *Burns* the police officers detained Cathy Burns at the police station while seeking the prosecutor's advice on whether probable cause existed to arrest Ms. Burns. *Burns*, 500 U.S. at 483. The prosecutor, after listening only to the statements Ms. Burns had said to the officers, told the officers that they likely had probable cause to arrest her. *Id.* Here, AP Grady just told the officers the ECPO would initiate charges against Plaintiff. Initiating a prosecution is not legal advice and falls squarely within the scope of absolute prosecutorial immunity. Therefore, the false arrest claim is dismissed, without prejudice, against AP Grady.

### C. Section 1983 Qualified Immunity

Finally, Defendants argue that Plaintiff's claims of false arrest and malicious prosecution against Detective O'Neal and Sergeant Campo must be dismissed because they are entitled to qualified immunity under Section 1983.[3] To that end, Defendants argue that their arrest of

---

[3] Defendants actually assert that "the *Kim Branch* is entitled to dismissal of all Section 1983 and *NJCRA* claims, with prejudice, on the basis of qualified immunity." Def. Brf. at 17 (emphases added). Defendants also then go on to cite cases discussing NJCRA qualified immunity. *Id.* The Court has no idea as to whom Kim Branch is, why Branch is relevant to this case, or why the NJCRA is discussed when Plaintiff asserts his claims under only Section 1983 against only AP Grady, Detective O'Neal, and Sergeant Campo.

Plaintiff based on the information possessed prior to the indictment was not a constitutional

violation and, further, not a violation of a clearly established right. Def. Brf. at 19.

Plaintiff counters that Defendants bear the burden of establishing their entitlement to the

defense of qualified immunity, *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001),

and that they have not done so. Plaintiff argues the Complaint's factual allegations illustrate that

Defendants lacked probable cause to arrest him. Further, Plaintiff asserts that arresting someone

without probable cause is a constitutional violation of a clearly established right. *Losch v.*

*Borough of Parkesburg, Pa.*, 736 F.2d 903, 907 (3d Cir. 1984) ("It is clear that the filing of

charges without probable cause and for reasons of personal animosity is actionable under §

1983."). Pl. Opp. at 7-8.

The Court recognizes that both the Third Circuit and United States Supreme Court have

found that questions of immunity should be resolved at the earliest possible litigation stage.

*Miller v. Clinton Cty.*, 544 F.3d 542, 547 (3d Cir. 2008). Based on the current record, however,

the Court cannot determine that O'Neal and Campo are entitled to such immunity. 42 U.S.C. §

1983, in relevant part, provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory . . . subjects, or causes to
> be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be liable
> to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress[.]

Section 1983 does not provide substantive rights. Rather, it provides a vehicle for

vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

In order to state a valid claim for relief under Section 1983, a plaintiff must first allege a

violation of a right secured by the Constitution or laws of the United States and, second, a

plaintiff must contend that the violation was caused or committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

When a state officer's actions give rise to a Section 1983 claim, qualified immunity can shield the officer from liability. *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005). "The defendant has the burden of establishing qualified immunity." *Ihlenfeld v. Darby Borough Police Dep't*, No. 16-01990, 2017 WL 132169, at *6 (E.D. Pa. Jan. 13, 2017). The United State Supreme Court has found the issue of qualified immunity turns on two questions: (1) whether Plaintiff's alleged facts make out a violation of a constitutional right; and (2) if so, whether the right at issue was clearly established at the time of defendant's alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Thus, qualified immunity "can be overcome when state officials violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 806 (1982)). As to whether a right is clearly established, the Supreme Court has ruled that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

At this stage, Defendants have not met their burden of showing that they did not violate a clearly established constitutional right. The ECPO charged Defendant under N.J.S.A. 2C:20-3(a). N.J.S.A. 2C:20-3(a) provides that "[a] person is guilty of theft if he *unlawfully* takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof." (Emphasis added).

Obviously, if Plaintiff was (as he alleges) an authorized user of his mother's credit card account and/or used the account with her permission, he was not acting unlawfully. Based on the plausibly pled allegations in the Complaint, O'Neal and Campo did not try to determine who, if

anyone, was an authorized user of Dr. Gould's credit card account. Defendants also did not

contact Dr. Gould to determine whether Plaintiff was using her account with her permission. It

would appear, as a practical starting point, that law enforcement would contact the alleged victim

to determine if, in fact, she is a victim.[4] Defendants fail to even review the elements of a second

degree theft by unlawful taking in their briefing, much less conduct a factual analysis of probable

cause.

　　As pled in the Complaint, Defendants appear to have arrested Plaintiff without taking

the time and effort to first establish probable cause. Therefore, Defendants are not entitled to

qualified immunity under Section 1983. The Court will not dismiss the false arrest and

malicious prosecution claims against Detective O'Neal and Sergeant Campo.

## IV.　CONCLUSION

　　For the reasons set forth above, Defendant's motion to dismiss is **GRANTED**. The

Court grants Defendants' motion to dismiss as to the claim of false arrest against AP Grady.

Thus, Count One is dismissed without prejudice as against AP Grady. The Court denies

Defendants' motion to dismiss Count One and Count Two as against Detective O'Neal and

Sergeant Campo based on qualified immunity. However, the Court dismisses the Complaint

without prejudice as to all Defendants because the Complaint appears to charge all in their

official capacity. Plaintiff has thirty (30) days to file an amended complaint, if he so chooses,

consistent with this Opinion. If Plaintiff does not do so, this case will be dismissed with

prejudice. An appropriate Order accompanies this Opinion.

Dated: February 8, 2018

John Michael Vazquez, U.S.D.J.

---

[4] At this stage, the Court is accepting the well-pleaded factual allegations as true. Defendants
may have sufficient information demonstrating that they acted with probable cause.