UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JONATHAN GOULD,<br><br>              Plaintiff,<br>v.<br><br>DETECTIVE ROBERT O'NEAL, et al<br><br>              Defendants. | Civil Action No. 17-100 (JMV)<br><br>OPINION AND ORDER |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on the Motion by Plaintiff Jonathan Gould ("Plaintiff" or "Mr. Gould") to compel non-parties Chase Bank USA, N.A., JPMorgan Chase Bank, N.A., and JPMorgan Chase & Co. (collectively "Chase") to comply with the Subpoena served on Chase on November 28, 2018 (the "November Subpoena"), ECF No. 57. Chase has opposed this Motion, ECF No. 59, and Plaintiff filed a reply, ECF No. 61. The Court has reviewed the parties' written submissions and considers Plaintiff's motion without oral argument pursuant to L. Civ. R. 78.1(b). For the reasons set forth below, Plaintiff's Motion to Compel, ECF No. 57, is **GRANTED**.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The Court's February 8, 2018 Opinion dismissing Plaintiff's Complaint without prejudice, ECF No. 30, includes a detailed recounting of the background of this matter. To the extent relevant to this motion, the Court incorporates that factual and procedural history into this Opinion and summarizes the critical facts and procedural history herein.

Sometime in 2014, the Essex County Prosecutors Office (the "ECPO") opened an investigation into Plaintiff's alleged improper use of his mother's credit card account with Chase. Amended. Complaint ("Am. Compl.") ¶ 22, ECF No. 32. The defendants in this matter are employees of the ECPO. *Id.* ¶ 2. Robert O'Neal is a detective and John Campo is a sergeant (collectively, the

1

"Defendants"). *Id*. ¶¶ 19, 20. Defendants accused Plaintiff of stealing more than $75,000.00 from his mother, Dr. Carol Gould ("Dr. Gould"). *Id*. ¶ 4. In February 2015, Plaintiff was issued a Complaint charging him with second-degree theft by unlawful taking in violation of N.J.S.A. 2C:20-3(a). *Id*. ¶ 36.

On February 26, 2015, Plaintiff appeared in Court pursuant to the Complaint, and entered a plea of not guilty. *Id*. ¶ 40. Sometime after the court hearing, Defendants visited Dr. Gould and spoke with her regarding Plaintiff's use of her Chase credit card account. *Id*. ¶ 44. Dr. Gould advised Defendants that Plaintiff was an authorized user of the account and that she approved all of the charges that Defendants alleged were unlawful. *Id*. ¶ 45. Following this meeting, the ECPO administratively dismissed the criminal case against Plaintiff and the Superior Court of New Jersey entered a final order of expungement. *Id*. ¶¶ 48-49.

On January 6, 2017, Plaintiff instituted this action against Defendants alleging claims of false arrest (Count One) and malicious prosecution (Count Two), both in violation of 42 U.S.C. § 1983. Complaint ¶¶ 52-72. After the Court granted Defendants' motion to dismiss, ECF No. 31, Plaintiff filed an Amended Complaint realleging claims for false arrest and malicious prosecution. *See* Am. Compl. ¶¶ 54-74.

Plaintiff asserts that the key issue in this matter is whether probable cause existed to arrest him for second-degree theft. Memorandum in Support of Plaintiff's Motion to Compel ("Pl's Mot."), ECF No. 57-1 at 1. According to Plaintiff, the documents produced thus far indicate that the only factual basis for his arrest was based on the information the ECPO received from Chase. *Id*. Thus, Plaintiff contends that the substance of this communication is central to this litigation. Based on the documents produced by the ECPO, Plaintiff learned that the ECPO and Chase communicated by email, fax and telephone. *Id*. at 2.

In July 2018, Plaintiff served three subpoenas (the "July Subpoenas") on Chase requesting "[a]ll [d]ocuments concerning communications with the Essex County Prosecutor's Office and/or any other government agency concerning Jonathan Gould and/or Carol Gould." Pl.'s Mot., Ex. 3, ECF No. 57-3. In response to the July Subpoenas, Chase produced a single, nine-page document, which was heavily redacted. Pl.'s Mot., ECF No. 57-1 at 2. Although Chase did not object to Plaintiff's July Subpoenas, Plaintiff claims that Chase did not produce a privilege log, nor did it produce documents or any other written communications with the ECPO. *Id*. Sometime after receiving Chase's responsive document, Plaintiff notified Chase that he regarded the production as deficient. *Id*. at 2-3. Apparently, Plaintiff sought to obtain the same information from the ECPO, but when requested the ECPO informed Plaintiff that its file appeared to be incomplete. *Id*.

Plaintiff alleges that on November 27, 2018, Chase requested a more broadly worded subpoena to allow Chase to produce the relevant documents. *Id*. at 3. In response, Plaintiff issued a fourth Subpoena on November 28, 2018 addressed to Chase Bank USA, N.A., JPMorgan Chase Bank, N.A., and JPMorgan Chase & Co. *See* Pl.'s Mot., Ex. 4, ECF No. 57-6 at 6. The November Subpoena requests production of the following:

> All documents concerning any investigation concerning Jonathan Gould and/or his mother, Carol Gould (deceased), during the time period from January 1, 2011 through December 31, 2015. This includes all investigative files, electronic and/or other written correspondence, reports, memoranda, and any other investigative materials.

*Id*. Chase responded to the November Subpoena on December 3, 2018 stating that Chase would not search for responsive documents absent Plaintiff's agreement in advance to pay the cost of having an outside vendor handle Chase's response to the Subpoenas. Pl's Mot., ECF No. 57-1 at 3; *see also* Declaration of David Shanies ("Shanies Decl."), ECF No. 57-2 ¶ 17. To date, Plaintiff claims that Chase has not provided how it stores its data, what it would take to retrieve stored data, and has failed

3

to explain why complying with the subpoena constitutes an undue burden. *Id*. As a result, Plaintiff filed the current motion to compel non-party Chase to comply with the November Subpoena.

Chase objects to the November Subpoena on the following grounds: (1) Plaintiff has already obtained the information and documentation that it seeks from the ECPO; (2) the November Subpoena demands the production of documents that contain Chase's sensitive, confidential and/or proprietary information; and (3) Chase should not bear the cost of complying with the November Subpoena. Memorandum of Law in Opposition to Plaintiff's Motion to Compel ("Chase's Opp'n"), ECF No. 59 at 8.[1]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the scope of discovery in federal litigation and provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele–Radio Sys. Ltd. v. De Forest Elecs., Inc.,* 92 F.R.D. 371, 375 (D.N.J. 1981). "Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir. 1999). Discovery requests may be curtailed to protect a person from

---

[1] For the sake of clarity, when citing to non-party Chase's opposition papers the Court will cite to the page number listed on the ECF header.

whom discovery is sought from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Discovery sought via a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b). *OMS Investments, Inc. v. Lebanon Seaboard Corp.,* 2008 WL 4952445 (D.N.J. Nov. 18, 2008). Federal Rule of Civil Procedure 45(d)(2)(B)(i) sets forth the procedure by which the Court may compel compliance with a Subpoena. In pertinent part, the Rule provides, "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." If the subpoenaing party shows the documents sought to be relevant, the resisting non-party must "explain why discovery should not be permitted." *Miller v. Allstate Fire & Cas. Ins. Co.*, No. CIV. 07-260, 2009 WL 700142, at *2 (W.D. Pa. Mar. 17, 2009) (citation omitted).

However, the Court's ability to force compliance with a Subpoena is limited by Rule 45(d), which provides:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction-which may include lost earnings and reasonable attorney's fees-on a party or attorney who fails to comply.

Under Rule 45, "courts have significant discretion" to quash or modify a Subpoena where the discovery sought is irrelevant, or compliance with the subpoena would be "unreasonable and oppressive." *First Sealord Sur. v. Dunkin & Devries Ins. Agency,* 918 F.Supp.2d 362, 383 (E.D.Pa. 2013) (citing Fed. R. Civ. P. 45).

In applying Rules 26 and 45, the Court must balance several competing factors in assessing the reasonableness of a subpoena: (1) relevance, (2) the party's need for the documents, (3) the breadth of the document request, (4) the time period covered by it, (5) the particularity with which the

5

documents are described, (6) the burden imposed, and (7) the subpoena recipient's status as a nonparty to the litigation. *See generally Biotechnology Value Fund, L.P. v. Celera Corp.*, No. CIV.A. 14-4046 PGS, 2014 WL 4272732, at *2 (D.N.J. Aug. 28, 2014). The resolution of the instant dispute lies within the Court's sound discretion. *In re: Riddell Concussion Reduction Litig.*, No. 13–7585, 2016 WL 4119807, at *2 (D.N.J. July 7, 2016); *Forrest v. Corzine*, 757 F. Supp.2d 473, 477 (D.N.J. 2010) ("Magistrate Judges are given wide discretion to manage cases and to limit discovery in appropriate circumstances.").

### III.  DISCUSSION

As an initial matter, the Court finds that the information Plaintiff seeks is relevant. Plaintiff seeks to compel Chase to produce "[a]ll documents concerning any investigation concerning Jonathan Gould and/or his mother, Carol Gould (deceased), during the time period from January 1, 2011 through December 31, 2015. This includes all investigative files, electronic and/or other written correspondence, reports, memoranda, and any other investigative materials." November 28, 2018 Subpoena, ECF No. 57-6 at 5. Plaintiff maintains that the crux of this case is determining whether probable cause existed at the time of his arrest. Thus, the communications between Chase, the ECPO, and the Defendants regarding the investigation into Plaintiff are central to issues involved in this litigation.

The Court agrees. Sometime in 2014, Chase conducted an investigation concerning a credit card account maintained by Plaintiff's mother. Following the conclusion of their investigation, Chase forwarded its file to the ECPO, which subsequently charged Plaintiff with second degree theft. Am. Compl. ¶ 36. In February 2015, Plaintiff appeared in state court and pled not guilty to the charges. *Id.* ¶ 38. Following Plaintiff's state court appearance, representatives of the ECPO met with Dr. Gould, who advised the representatives that Plaintiff was an authorized user of her account and had her full

permission to use her credit card. *Id.* ¶ 45. Shortly thereafter, the ECPO administratively terminated Plaintiff's case and the Court expunged his record. *Id*. ¶¶ 48-49. As a result, Plaintiff instituted this action alleging claims of false arrest (Count One) and malicious prosecution (Count Two) against Defendants. *Id*. ¶¶ 54-74. Clearly, the information that Plaintiff seeks from Chase will produce evidence that potentially bears on the issues involved in this litigation. Accordingly, the Court finds that the requested information is relevant to Plaintiff's claims.

Having found that the information Plaintiff requests is relevant, the burden shifts to Chase to explain why discovery should not be permitted. *See Miller*, No. CIV. 07-260, 2009 WL 700142, at *2. Chase contends that Plaintiff's November Subpoena is unduly burdensome and the cost of compliance is unjustifiable. *See* Chase's Opp'n, ECF No. 59 at 8, 9. A subpoena is considered unduly burdensome when the Court finds that it "is unreasonable or oppressive." *OMS Investments, Inc.*, 2008 WL 4952445, at *2 (citations omitted). The party challenging the subpoena has "the heavy burden of demonstrating the unreasonableness or oppressiveness of the subpoena." *Id*. Moreover, a nonparty responding to a subpoena is typically required to pay its own costs of production. Rule 45(d)(1), however, expressly establishes the responsibility of courts and parties to avoid "imposing undue burden or expense" on the person or entity subject to the subpoena. Fed. R. Civ. P. 45(d)(1).

To determine whether a subpoena is reasonable and does not create an "undue burden or expense", courts typically assess factors such as the following: 1) relevance of the information sought; 2) the party's need for the production; 3) the breadth of the request; 4) the time period covered by the request; 5) the request's particularity; and 6) the burden imposed. *Miller.*, No. CIV. 07-260, 2009 WL 700142, at *2 (citations omitted). That the subpoena is directed to a nonparty is also an appropriate consideration in this undue burden calculus. *See* Fed. R. Civ. P. 45, Advisory Committee Note of 1991 ("A nonparty required to produce documents or materials is protected against significant expense

resulting from involuntary assistance to the court."). Furthermore, an undue burden is often created where the material sought from a nonparty is easily available from a party; however, this factor alone is not dispositive. *Miller.*, No. CIV. 07-260, 2009 WL 700142, at *2

According to Chase, Plaintiff's November Subpoena is unduly burdensome because Plaintiff already obtained the relevant information which he seeks from the ECPO. Chase's Opp'n, ECF No. 59 at 7. Specifically, Chase contends that Plaintiff obtained twenty-nine unredacted documents from the ECPO which appear to comprise the substance of Chase's investigatory file related to Plaintiff and Dr. Gould. *Id*. Because Plaintiff is in possession of these files, Chase argues that Plaintiff's demands in the November Subpoena are unduly burdensome and not supported by Rule 45. The Court disagrees.

In considering the test for undue burden as outlined above, the Court notes, as Plaintiff highlights, that the heart of this case depends on whether probable cause existed at the time of Plaintiff's arrest. As discussed herein, Chase's documents and communications with the ECPO, and law enforcement in general, are relevant and essential to reaching this determination. Although Plaintiff did obtain some of the information sought from the ECPO, Deputy Chief Assistant Prosecutor Michael Morris, Esq., of the ECPO admitted that the files related to the criminal charges against Plaintiff appear to be incomplete, for reasons he cannot explain. Pl.'s Mot., ECF No. 57-1 at 2; *see also* David Shanies Supplemental Decl., ECF No. 61-1 ¶2. Absent the complete file, Plaintiff appears unable to determine whether there was probable cause to arrest him. Thus, it was wholly appropriate and necessary for Plaintiff to subpoena nonparty Chase to supplement the incomplete investigatory file provided to Plaintiff by the ECPO. Additionally, the information Plaintiff seeks does not appear to be easily available to a party in this action. In fact, counsel for Plaintiff, David Shanies, Esq., declares that "Chase has received a substantially similar subpoena from Defendants." Shanies Decl. ¶ 16, ECF No. 57-2. Accordingly, the Court finds that the documents Plaintiff seeks are relevant,

necessary to resolve the issues pending in this litigation, narrow in breadth and time, and are described with sufficient particularity. Nonetheless, the Court acknowledges Chase's status as a non-party and considers its arguments regarding the potential cost of compliance with the November Subpoena.

Chase argues that it should not be compelled to pay the cost of complying with the November Subpoena. To this point, Chase contends that it has no interest in the outcome of this action and it would be "unjustifiably burdened [if] forced to pay for a costly ESI search for no articulable reason." Chase's Opp'n, ECF No. 59 at 9. Federal Rule of Civil Procedure 45(c)(2)(B) imposes mandatory fee shifting and directs the court to "protect" a nonparty from "significant expense resulting from inspection and copying commanded." Thus, district courts must determine whether the subpoena imposes expenses on a non-party and whether those expenses are significant. *Magna Mirrors of Am., Inc. v. Pittsburgh Glass Works LLC*, No. 2:07-CV-10688, 2012 WL 4904515, at *2 (W.D. Pa. Oct. 15, 2012) (citing James Wm. Moore, 9 Moore's Federal Practice § 45.04[2] (3d ed. 2001)).

Significant expenses must be borne by the party seeking discovery. *Id*. The three factors to be considered in deciding if the expenses on a nonparty are significant are "whether the nonparty actually has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party and whether the litigation is of public importance." *Magna Mirrors of Am., Inc.*, No. 2:07-CV-10688, 2012 WL 4904515, at *3 (citation omitted).

With respect to these factors, Chase contends that it has no interest in the outcome of this action and will be unjustifiably burdened if forced to pay for a costly ESI search. Chase's Opp'n, ECF No. 59 at 12. Chase also asserts that this action, which involves Plaintiff's individual claim, is of no public importance. *Id*. First, the Court finds that there is no discernible public importance. Second, the Court acknowledges that as a nonparty Chase's interest in the outcome of this matter is not altogether obvious. Nonetheless, considering that Chase was involved in the investigation that led to Plaintiff's

9

criminal charges, which were subsequently terminated, it cannot clearly be said that Chase does not have any interest in the outcome of this matter. To that point, a ruling in favor of Plaintiff may result in a lawsuit against Chase, public backlash and/or some form of other negative consequences for their role in the investigation. Accordingly, the Court finds that Chase has some interest in the outcome of this case.

The Court now turns to the cost of compliance and the question of whether Chase can bear that cost more readily than Plaintiff. As to the cost of compliance, although Chase informed Plaintiff that it "estimated" the cost of compliance to be "approximately $26,432.22," Chase has failed to submit any documentation to the Court which supports the asserted cost.[2] The complete lack of evidence in support of the cost asserted by Chase prevents the Court from finding that the cost of Chase's compliance is "significant" and therefore must be paid by Plaintiff. *See E.E.O.C. v. Kronos Inc.*, 694 F.3d 351, 372 (3d Cir. 2012), *as amended* (Nov. 15, 2012) (noting that a finding of excessive burden "requires at least some evidence to support a party's assertion about what the actual costs of compliance will be.").

Turning to the question of whether Chase or Plaintiff can more readily bear the cost of compliance, it appears to the Court that Chase is unquestionably in a better position to bear any such costs. Plaintiff asserts, and Chase does dispute, that Chase is one of the largest companies in the world and reported $28.4 billion income over the past year. Pl's Mot. at 7. Although Chase contends that Plaintiff has failed to establish that he is unable to bear the burden of funding his own litigation, the operative inquiry is whether the nonparty can "more readily" bear the cost, not whether the requesting

---

[2] Although Chase's December 6, 2018 letter to Plaintiff sets forth the standard procedure utilized by Chase in conducting ESI searches and responding to subpoenas, Chase has failed submit any evidence to the Court which explains or supports Chase's estimated cost of compliance with the November Subpoena.

party is able to do so. Here, it is clear that Chase can more readily bear the cost of compliance than Plaintiff. Accordingly, any request by Chase to shift the cost of Compliance to Plaintiff is denied,

Finally, Chase objects to the November Subpoena on the grounds that it calls for the production of documents that relate to or contain sensitive, confidential and/or proprietary information. *See* Cert. Opp'n, Ex. D, ECF No. 58-4; *see also* Chase's Opp'n at ECF No. 59. The Court notes that Chase did not file a motion to quash under Fed. R. Civ. P. 45, nor did they seek a protective order under Fed. R. Civ. P. 26. While Chase generally contends that it is a "regulated bank that is highly sensitive to privacy and privilege issues," Chase has failed to explain to the Court the nature of the asserted "privacy and privilege issues" or why such concerns cannot be adequately addressed through redaction and or/the entry of a discovery confidentiality order.

Based upon the foregoing, the Court grants Plaintiff's motion to compel and denies Chase's request that the cost of its compliance with the November Subpoena be shifted to Plaintiff.

## IV. CONCLUSION

In light of the foregoing, and the Court having considered this matter pursuant to Fed. R. Civ. P. 78;

**IT IS** on this 26th day of September, 2019,

**ORDERED** that Plaintiff's Motion to Compel [ECF No. 57] is **GRANTED**; and it is further

**ORDERED** that Chase shall bear its own costs; and it is further

**ORDERED** that Chase's forthcoming production to Plaintiff shall include a privilege log.

    s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**